**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

––––––––––––––––––

No. 20-2364

––––––––––––––––––

ANTHONY MAMMANA,
                                                      Appellant

v.

LIEUTENANT BARBEN
JOHN DOES (1-10)

––––––––––––––––––

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 4-17-cv-00645)
District Judge: Hon. Matthew W. Brann

––––––––––––––––––

Argued March 17, 2021

Before: SHWARTZ, MATEY, and TRAXLER,[*] *Circuit Judges*.

(Opinion filed: May 21, 2021)

Carlton E. Forbes    [ARGUED]
David M. Zionts
Covington & Burling
850 10th Street, N.W.
One City Center
Washington, DC 20001

––––––––––––––––

[*] The Honorable William B. Traxler, Senior Circuit Judge, United States Court of
Appeals for the Fourth Circuit, sitting by designation.

Matthew B. Weisberg
Weisberg Law
7 South Morton Avenue
Morton, PA 19070

Samuel Weiss
Rights Behind Bars
416 Florida Avenue N.W.
#26152
Washington, DC 20001
      *Counsel for Appellant*

David J. Freed
Navin Jani    [ARGUED]
Office of the United States Attorney
Middle District of Pennsylvania
228 Walnut Street, P.O. Box 11754
220 Federal Building and Courthouse
Harrisburg, PA 17108
      *Counsel for Appellee Lieutenant Barben*

—————————

OPINION[**]

—————————

MATEY, *Circuit Judge*.

In a prior decision, we held that, if the allegations were true, then Anthony Mammana pleaded a claim that Lieutenant Barben violated his Eighth Amendment rights during his incarceration at Allenwood Federal Correctional Institution. Now, we consider whether Mammana can sue Barben to recover damages for that injury. The answer comes from a long line of decisions creating, and then sharply limiting, implied rights of action for constitutional torts. Those decisions give Congress, and not the courts, responsibility

---

[**] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

for creating new remedies for injuries caused by federal officers. Congress has not created such a remedy here and Mammana's claims are meaningfully distinct from any prior cases in which the Supreme Court has recognized a *Bivens* claim. For that reason, we will affirm the District Court's grant of Barben's motion for judgment on the pleadings.

## I. BACKGROUND

We summarize the facts drawing from our prior decision. While incarcerated at Allenwood FCI,[1] Mammana reported illness following meals. A visit to the medical ward led to an evaluation by the resident psychologist. Finding no psychological causes for the discomfort, Mammana returned to the medical ward. But the medical assistant refused Mammana entry until the psychologist intervened on his behalf. Angered by this incident, the assistant filed a report that caused Mammana's placement in administrative segregation. Then, when Mammana refused a second transfer, Lieutenant Barben ordered Mammana placed in the separate administrative space known internally as the "Yellow Room."[2]

---

[1] Mammana pleaded guilty to one count of conspiracy to distribute and possess with intent to distribute methamphetamine, more than five kilograms of cocaine, and marijuana in violation of 21 U.S.C. § 846. Plea Agreement, *United States v. Mammana*, 07-cr-00040 (M.D. Pa. Dec. 29, 2008), ECF No. 114. In 2011, he was sentenced to 78-months' imprisonment, but in 2015, the District Court reduced his sentence to 63-months' imprisonment. Order, *United States v. Mammana*, 07-cr-00040 (M.D. Pa. Apr. 8, 2015), ECF No. 218.

[2] The Yellow Room is a cell within administrative segregation that has extra bright lights and yellow walls that reflect and intensify that light. It is kept at very cold temperatures and has an ultra-thin mattress. When an inmate receives the "Yellow Room treatment," he is stripped of his standard uniform and forced to wear a "see-through thin" alternative, he is deprived of any blankets or sheets, and the lights are kept on for twenty-four hours a day. (App. at 24.) In Mammana's case, he was also deprived a pillow,

Mammana spent four days confined in the Yellow Room before he was transferred back to general administrative segregation.

A disciplinary hearing on the medical assistant's complaint found no wrongdoing by Mammana. After serving his sentence, Mammana sued Barben (and several John Doe defendants) alleging Eighth Amendment violations resulting from his Yellow Room treatment. Barben moved to dismiss, arguing Mammana's complaint failed to state a claim under the Eighth Amendment. The District Court agreed, concluding Mammana failed to allege a plausible constitutional violation. We reversed that decision and held the alleged "denial of the minimal civilized measure of life's necessities, in particular, warmth and sufficient sleep," was enough to state a claim under the Eighth Amendment. *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 374 (3d Cir. 2019) (*Mammana I*) (citations and quotation marks omitted).

On remand, after Mammana amended his complaint, Barben moved for judgment on the pleadings under Fed. R. Civ. P. 12(c) claiming that Mammana lacked a cause of action under *Bivens*. The District Court granted the motion, reasoning that this case presented a new *Bivens* context and, while Mammana had no alternative remedy, there were special factors counseling against expansion. Mammana timely appealed.[3]

---

washcloths, towels, toothpaste, a toothbrush, and toilet paper, and the guards chided and mocked him all night.

    [3] The District Court had jurisdiction under 28 U.S.C. § 1331, and we have jurisdiction under 28 U.S.C. § 1291. We review a granted motion for judgment on the pleadings de novo. *Bedoya v. Am. Eagle Express, Inc.*, 914 F.3d 812, 816 n.2 (3d Cir. 2019).

## II. DISCUSSION

As we recently recounted, "[t]he law now codified as 42 U.S.C. § 1983 was first passed by Congress in the Civil Rights Act of 1871. The 1871 Act created a federal cause of action allowing citizens to sue a state or local official in federal court for violating 'constitutional rights, privileges and immunities' through an 'abuse of his position.'" *Fogle v. Sokol*, 957 F.3d 148, 156–57 (3d Cir. 2020) (footnote omitted) (quoting *Monroe v. Pape*, 365 U.S. 167, 172 (1961)). But Congress did not allow for suits against federal officers, a decision the legislature has not revisited in more than 150 years.

Despite that legislative choice, in 1971, the Supreme Court located an implied right of action for damages in the Constitution, available against officials acting under the color of federal law. *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 397 (1971). But in several cases spanning decades of review, the Court has since "adopted a far more cautious course before finding implied causes of action" because when asked "who should decide whether to provide for a damages remedy, Congress or the Courts[,] [t]he answer most often will be Congress." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855, 1857 (2017) (internal citation and quotation marks omitted). Perhaps because the Court has "cabined the doctrine's scope, undermined its foundation, and limited its precedential value," *Hernandez v. Mesa*, 140 S. Ct. 735, 752–53 (2020) (Thomas, J., concurring) (*Hernandez II*), "expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Abbasi*, 137 S. Ct. at 1857 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)).

But while *Bivens* claims are disfavored, they do not automatically fail. *Abbasi* provides a two-part framework for determining when a *Bivens* claim is cognizable. First,

we ask whether the *Bivens* claim arises in a new context. *Id.* at 1859. If it does, then the court must determine whether there are "special factors counselling hesitation" against expanding *Bivens*. *Id.* at 1857. *See also Mack v. Yost*, 968 F.3d 311, 317 (3d Cir. 2020). Finding any special factors defeats the action as we must "reject the request" to recognize a *Bivens* claim. *Hernandez II*, 140 S. Ct. at 743.[4]

### A.    Mammana's Case Presents a New *Bivens* Context

A case presents a new *Bivens* context if it "is different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court." *Abbasi*, 137 S. Ct. at 1859. So a new-contexts inquiry begins by looking at the existing *Bivens* contexts against which a new case can be compared. Only decisions by the Supreme Court—and not those by our Court or any other circuit court—are relevant. *See Mack*, 968 F.3d at 319 (citing *Bistrian v. Levi*, 912 F.3d 79, 95 (3d Cir. 2018)).

The Supreme Court has recognized *Bivens* claims three times: 1) the Fourth Amendment search-and-seizure in *Bivens*, 2) a Fifth Amendment sex-discrimination claim in *Davis v. Passman*, 442 U.S. 228 (1979), and 3) "in *Carlson v. Green*, 446 U.S. 14 (1980), a federal prisoner's Eighth Amendment claim for failure to provide adequate medical treatment." *Hernandez II*, 140 S. Ct. at 741. Here, all agree that of these three, only *Carlson* is relevant.[5]

---

[4] Of course, a successful *Bivens* claim must also adequately allege the violation of a constitutional right. *See, e.g.*, *Hernandez v. Mesa*, 137 S. Ct. 2003, 2007 (2017) (per curiam) (*Hernandez I*). *Mammana I* already determined that Mammana's claim adequately alleged an Eighth Amendment violation. 934 F.3d at 374.

[5] Mammana urges us to consider a fourth Supreme Court decision, *Farmer v. Brennan*, 511 U.S. 825 (1994). In *Farmer*, the Court considered a claim under the Eighth

*Carlson* involved an allegation that prison officials were deliberately indifferent to an inmate's medical needs during a severe asthma attack. 446 U.S. at 16 & n.1. But little links *Carlson* to Mammana's claims beyond federal prison employees and alleged Eighth Amendment violations. Mammana alleges Barben violated the Eighth Amendment through his "deliberate indifference to the substantial risk of harm posed by Mr. Mammana's mistreatment in the Yellow Room." (Opening Br. at 15.) Mammana challenged "his confinement in a chilled room with constant lighting, no bedding, and only paper-like clothing." *Mammana I*, 934 F.3d at 370. All of which "bear little resemblance to . . . a claim against prison officials for failure to treat an inmate's asthma." *Abbasi*, 137 S. Ct. at 1860. And the Supreme Court has made clear that "even a modest extension [of *Bivens*] is still an extension," *id.* at 1864, and "[a] claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Hernandez II*, 140 S. Ct. at 743.

---

Amendment brought by a federal inmate who alleged prison officials failed to provide appropriate protection from prisoner violence. *Id.* at 829. The Court reversed a grant of summary judgment and allowed the claim to proceed without ever discussing *Bivens* or the availability of an implied cause of action. *Id.* at 851. We characterized *Farmer* as "recogniz[ing] a failure-to-protect [*Bivens*] claim under the Eighth Amendment." *Bistrian v. Levi*, 912 F.3d 79, 91 (3d Cir. 2018). Yet the Supreme Court declined to list failure-to-protect, or *Farmer*, as a *Bivens* claim in *Hernandez II*, decided two years post-*Bistrian*. *Hernandez v. Mesa*, 140 S. Ct. 735, 741 (2020) (*Hernandez II*). But we need not consider that tension today. Mammana does not bring a failure-to-protect claim and makes no allegations of prisoner-on-prisoner violence. So while his claim might appear much like the holding in *Farmer*, "once we look beyond the constitutional provisions invoked . . . , it is glaringly obvious that [Mammana's] claims involve a new context, *i.e.*, one that is meaningfully different" from *Farmer*. *Hernandez II*, 140 S. Ct. at 743.

### B.    Special Factors Counsel Hesitation to Expand *Bivens*

Beginning in *Bivens*, the Supreme Court has consistently cautioned courts against recognizing an implied cause of action against federal officers if there were any "special factors counseling hesitation in the absence of affirmative action by Congress." *Bivens*, 403 U.S. at 396. And in recent years, the Court has clarified that standard. "The necessary inference . . . is that the inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Abbasi*, 137 S. Ct. at 1857–58. If a court "ha[s] reason to pause before applying *Bivens* in a new context or to a new class of defendants," *Hernandez II*, 140 S. Ct. at 743, then there are special factors counseling hesitation.

From that direction, we have recognized two "particularly weighty" special factors: 1) the availability of alternate remedies; and 2) separation-of-powers concerns. *Mack*, 968 F.3d at 320 (quoting *Bistrian*, 912 F.3d at 90). And here, significant separation-of-powers concerns abound. As *Abbasi* explained, "legislative action suggesting that Congress does not want a damages remedy is itself a factor counseling hesitation" and Congress's omission of a "standalone damages remedy against federal jailers" when it passed the Prison Litigation Reform Act post-*Carlson* "suggests Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment." *Abbasi*, 137 S. Ct. at 1865. While we have rejected the argument that Congress's inaction in this arena "suggests that Congress did not want a damages remedy against prison officials for constitutional violations," *Mack*, 968 F.3d at 324, because the PLRA "cannot rightly be seen as dictating that a *Bivens* cause of action should not exist at all," *Bistrian*, 912 F.3d at

93, congressional silence on prison litigation can still counsel hesitation in *some* contexts, especially when the prisoner mistreatment alleged is different and quite more general than that alleged in *Carlson*.[6]

Mammana's claim warrants hesitation. Candidly, he asks for a new implied cause of action to sue federal prison officials for unconstitutional conditions of confinement, a step never taken by the Supreme Court nor any circuit court.[7] "Heeding the reasoning in *Abbasi*, we must be reluctant to 'establish whole categories of cases in which federal officers must defend against personal liability claims in the complex sphere of litigation.'" *Bistrian*, 912 F.3d at 95 (quoting *Abbasi*, 137 S. Ct. at 1858). Recognizing such a broad new category of claims would step well into the lawmaking privilege delegated only to Congress, and well over the bounds of our limited constitutional power. *See Alexander v.*

---

[6] This is especially true when recognizing a new *Bivens* claim would "establish whole categories of cases in which federal officers must defend against personal liability claims in the complex sphere of litigation." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1858 (2017); *see also Mack v. Yost*, 968 F.3d 311, 324 (3d Cir. 2020). As *Mack* noted, in such circumstances, "*Bivens* expansion would be an inappropriate exercise of judicial power." *Id.* at 325. While we have not foreclosed the possibility that there may be future cases where "judicial intervention is needed to fulfill our obligation to faithfully uphold the Constitution," *id.*, today, we follow in the footsteps of *Mack* and again "exercise restraint and allow Congress to decide whether to redress the harm present in these types of cases." *Id.* After all, "separation-of-powers principles should be central to [*Bivens*] analysis" because "[m]ost often it will be Congress," and not the courts, deciding to authorize a damages suit. *Abbasi*, 135 S. Ct. at 1848.

[7] Our dissenting colleague notes that a recent unpublished opinion in the Ninth Circuit concluded an Eighth Amendment conditions-of-confinement claim did not present a new *Bivens* context. *Reid v. United States*, 825 F. App'x 442, 444 (9th Cir. 2020) (per curiam). But another recent unpublished opinion reached the opposite conclusion, holding a similar conditions-of-confinement claim did present a new *Bivens* context. *Schwarz v. Meinberg*, 761 F. App'x 732, 734 (9th Cir. 2019) (per curiam). So we decline to rely on either non-precedential panel view as persuasive.

*Sandoval*, 532 U.S. 275, 286–87 (2001) ("Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress."); *Abbasi*, 137 S. Ct. at 1856 ("[I]t is a significant step under separation-of-powers principles for a court to determine that it has the authority, under the judicial power, to create and enforce a cause of action for damages against federal officials in order to remedy a constitutional violation.").

That is a special factor counseling hesitation to expand *Bivens*. Because we pause, we must "reject the request" to recognize this new *Bivens* context. *Hernandez II*, 140 S. Ct. at 743.

### III. CONCLUSION

For these reasons, we will affirm the District Court's grant of the Appellee's motion for judgment on the pleadings.

SHWARTZ, J. dissenting.

Today we consider whether a federal prisoner may sue a federal corrections officer based upon inhumane conditions of confinement that violate the Eighth Amendment right to be free from cruel and unusual punishment.  Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), allows lawsuits against federal officers for violations of the Constitution in certain identified contexts as well as when there are no special factors counseling hesitation against allowing a claim in a new context to proceed.  Because the present case does not present a new context, and, even if it were a new context, the special factors do not counsel against recognizing a conditions of confinement claim, I would vacate the order granting Lieutenant Barben judgment on the pleadings.

I

Anthony Mammana served some of his seven-year sentence at Allenwood Low Federal Correctional Institution.  While incarcerated at Allenwood, Mammana began to suffer from a medical condition and sought treatment.  After several visits to the medical unit, a medical assistant accused Mammana of harassment, stalking, and interfering with the performance of her prison duties.  Her accusation was ultimately determined to be unfounded.

Before the medical assistant's complaint was resolved, however, prison officials placed Mammana in administrative segregation.  Mammana objected because his proposed cellmate had a reputation for sexually assaulting his fellow prisoners.  When Lieutenant Barben learned that Mammana refused to be transferred, he directed that

Mammana be placed in the so-called "Yellow Room" for four days and given the

"Yellow Room treatment." JA 24. Mammana alleged that (1) the Yellow Room had

continuous lighting, bright yellow walls, an extremely cold temperature, and a thin

mattress on a metal bed frame; and (2) while there, he was provided with only thin

"paper-weight clothing" and was given no sheets, blankets, or toiletries, such as

toothpaste, a toothbrush, and toilet paper. JA 24-25. Prison staff also allegedly taunted

Mammana while he was in the Yellow Room, asking him when he was "ready to tap

out." JA 25. Mammana continued to feel ill and requested medical treatment, but his

requests were denied.

Mammana thereafter sued Lieutenant Barben and others for, among other things, a

violation of his Eighth Amendment right to be free from cruel and unusual punishment.

The District Court has twice dismissed Mammana's Eighth Amendment claim. We

vacated the first dismissal order and remanded, concluding that "Mammana's alleged

deprivations and exposure reflect more than the denial of a comfortable prison, but rather

[constituted] the denial of the minimal civilized measure of life's necessities, in

particular, warmth and sufficient sleep." Mammana v. Fed. Bureau of Prisons, 934 F.3d

368, 374 (3d Cir. 2019) (quotation marks, alteration, and citations omitted). On remand,

Lieutenant Barben moved for, and the District Court granted him, judgment on the

pleadings, holding that Mammana may not bring a Bivens claim based upon inhumane

conditions of confinement.

II

A

2

The first issue in this case is whether an Eighth Amendment conditions of confinement claim is cognizable under <u>Bivens</u>.  To answer this question, I begin with a review of the <u>Bivens</u> doctrine.

In <u>Bivens</u>, the Supreme Court recognized an implied cause of action for damages against federal officials who violate an individual's Fourth Amendment right to be free from an unreasonable search because, in part, damages are a historically recognized "remedy for an invasion of personal interests in liberty."  403 U.S. at 395, 397.  The Supreme Court subsequently extended <u>Bivens</u> to permit claims against individual federal officers for gender discrimination based on the Fifth Amendment Due Process Clause, <u>Davis v. Passman</u>, 442 U.S. 228, 248-49 (1979), and for inadequate prison medical treatment in violation of the Eighth Amendment's prohibition of cruel and unusual punishment, <u>Carlson v. Green</u>, 446 U.S. 14, 17-19 (1980).

Our Court has also observed that the Supreme Court endorsed an Eighth Amendment <u>Bivens</u> action against federal officers who fail to protect an inmate from inmate-on-inmate violence.  <u>Bistrian v. Levi</u>, 912 F.3d 79, 90-91 (3d Cir. 2018) (discussing <u>Farmer v. Brennan</u>, 511 U.S. 825 (1994)).  We explained that the absence of a specific reference to <u>Farmer</u> in the Supreme Court's discussion of recognized <u>Bivens</u> contexts "may be that the [Supreme] Court simply viewed the failure-to-protect claim [from <u>Farmer</u>] as not distinct from the Eighth Amendment deliberate indifference claim

in the medical context [from <u>Carlson</u>]." <u>Id.</u> at 91.[1]  This perspective is correct.  Indeed, the Supreme Court itself has explained, albeit in the 42 U.S.C. § 1983 context, that there is:

> no significant distinction between claims alleging inadequate medical care and those alleging inadequate "conditions of confinement."  Indeed, the medical care a prisoner receives is just as much a "condition" of his confinement as the food he is fed, the clothes he is issued, the temperature he is subjected to in his cell, and the protection he is afforded against other inmates.  There is no indication that, as a general matter, the actions of prison officials with respect to these nonmedical conditions are taken under materially different constraints than their actions with respect to medical conditions.

<u>Wilson v. Seiter</u>, 501 U.S. 294, 303 (1991).  Thus, our Court in <u>Bistrian</u> correctly concluded that conditions of confinement claims are not limited to those predicated on a failure to provide adequate medical care but also include claims based upon a failure to protect an inmate.  <u>Bistrian</u> remains the law of our Court.

Here, we must decide if (1) Mammana's <u>Bivens</u> claim arises in a new context, that is, whether it is "different in a meaningful way" from the Supreme Court's previous <u>Bivens</u> cases, and (2) if it arises in a new context, "whether there are special factors counseling hesitation against extending <u>Bivens</u> into this new context." <u>Ziglar v. Abbasi</u>, 137 S. Ct. 1843, 1857-59 (2017).

---

[1] <u>Bistrian</u>'s analysis is undisturbed by <u>Hernandez v. Mesa</u>, 140 S. Ct. 735 (2020). As in <u>Ziglar v. Abbasi</u>, 137 S. Ct. 1843 (2017) (which <u>Bistrian</u> discussed), the <u>Hernandez</u> Court also listed only three recognized <u>Bivens</u> cases (<u>Bivens</u>, <u>Davis</u>, and <u>Carlson</u>), and like <u>Abbasi</u>, may not have listed <u>Farmer</u> as an established <u>Bivens</u> context because the Court viewed <u>Carlson</u> and <u>Farmer</u> as arising in the same context, namely a challenge to the conditions of a prisoner's confinement.  If the Supreme Court disagreed with <u>Bistrian's</u> interpretation of <u>Abbasi</u>, the <u>Hernandez</u> Court could have, of course, said so.

B

I first address whether we are confronted with a new context that would result in an extension of <u>Bivens</u>.  Although "even a modest extension [of <u>Bivens</u>] is still an extension," <u>id.</u> at 1864, there are "[s]ome differences, of course [that are] so trivial that they will not suffice to create a new <u>Bivens</u> context," <u>id.</u> at 1865.  The Supreme Court has explained:

> [a] case might differ in a meaningful way because of [1] the rank of the officers involved; [2] the constitutional right at issue; [3] the generality or specificity of the official action; [4] the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; [5] the statutory or other legal mandate under which the officer was operating; [6] the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or [7] the presence of potential special factors that previous <u>Bivens</u> cases did not consider.

<u>Id.</u> at 1860.  The observations in <u>Bistrian</u> and <u>Wilson</u>, as well as a consideration of these factors from <u>Abbasi</u>, all support holding that Mammana's conditions of confinement claim does not present a new <u>Bivens</u> context, and he thus should be permitted to pursue a <u>Bivens</u> claim against the individual federal officer who violated his Eighth Amendment rights.

First, as just stated, <u>Wilson</u> made clear that the conditions of a prisoner's confinement include the food, clothing, medical care, and safety that he receives.  501 U.S. at 303.  <u>Farmer</u> made a similar observation and further stated that federal prison officials are duty-bound to "provide humane conditions of confinement."  511 U.S. at 832.  A housing condition that poses a risk of harm to a prisoner, such as one that is unhygienic or unbearably cold, is a condition that serves no penological purpose, just like

a condition that deprives a prisoner of adequate medical care or protection from violence. Though Carlson focused specifically on medical care, both Carlson and Farmer recognized claims based upon prisoner mistreatment, see Abbasi, 137 S. Ct. at 1864. Because Mammana's claim is predicated upon the same type of wrong, his claim is within a context the Supreme Court has already recognized under Bivens.[2]

Second, the Abbasi considerations for determining whether the present context is meaningfully different from the recognized contexts show that Mammana's claim arises in the same context.  Like the plaintiffs in Carlson and Farmer, Mammana (a) brought claims against individual officers, and not high-ranking officials;[3] (b) seeks relief for a violation of the Eighth Amendment's prohibition against cruel and unusual punishment; and (c) challenges a specific action, rather than a general policy, that he alleges subjected him personally to harm.  Moreover, guidance exists that provides the parameters within which officers are to act and that directs how courts should assess alleged violations of the Eighth Amendment.  Indeed, in this very case, we have applied the Supreme Court's teachings to conclude that prison officials must ensure that a prisoner has "the minimal

---

[2] The Majority, by contrast, disregards Farmer and takes a narrow reading of Carlson as being solely about a prisoner's right to adequate medical treatment.  In so doing, the Majority does not respond to Abbasi's broad characterization of Carlson as being about "prisoner mistreatment," Farmer's enunciation that the Eighth Amendment demands "humane conditions of confinement," or Wilson's explanation that the medical care and safety a prisoner receives, as recognized Bivens claims in Carlson and Farmer respectively, are just different circumstances that together make up a prisoner's conditions of confinement.

[3] Thus, Mammana's claim is a far cry from the Bivens claim at issue in Abbasi, in which the plaintiffs "challenge[d] the confinement conditions imposed on illegal aliens pursuant to a high-level executive policy created in the wake of a major terrorist attack on American soil."  137 S. Ct. at 1860.

civilized measures of life's necessities," <u>Mammana</u>, 934 F.3d at 372-73 (quoting <u>Farmer</u>, 511 U.S. at 834), and that Mammana's allegations, if true, show he was deprived of them in violation of the Eighth Amendment, <u>id.</u> at 373-74.  Finally, cases challenging conditions of confinement have not resulted in a judicial intrusion that has disrupted the executive branch's running of prisons.  In fact, the intrusion from permitting Mammana's conditions of confinement claim to proceed is no different from the intrusion caused by the medical claims permitted by <u>Carlson</u>, the protection obligation embodied in <u>Farmer</u>, or the other types of conditions of confinement claims that state prisoners can bring against state officers.  <u>See, e.g.</u>, <u>Thomas v. Tice</u>, 948 F.3d 133, 138 (3d Cir. 2020) (applying <u>Farmer</u> to assess a § 1983 claim of a state prisoner challenging the conditions of his confinement); <u>Beers-Capitol v. Whetzel</u>, 256 F.3d 120, 125 (3d Cir. 2001) (same).

In short, these factors show that there is no meaningful difference between the conditions of confinement claim alleged here and those that the Supreme Court has permitted to proceed in <u>Carlson</u> and <u>Farmer</u>.  Thus, Mammana's claim does not arise in a new context, and the District Court erred in concluding otherwise.

### C

Even if Mammana's claim were viewed as arising in a new context, <u>Abbasi</u>'s pronouncement that <u>Bivens</u> extensions are disfavored does not mean that they are not permitted.  Here, the factors <u>Abbasi</u> identified for determining whether a court should

hesitate in permitting a claim to proceed should not give us pause in recognizing a

conditions of confinement claim against individual prison officers.

Abbasi identified two factors as "particularly weighty:  [1] the existence of an

alternative remedial structure and [2] separation-of-powers principles."  Bistrian, 912

F.3d at 90.  It also listed other factors to consider depending on the case:

> [3] the potential cost to the government of recognizing a private cause of action, both financially and administratively; [4] whether the judiciary is well suited to weigh those costs; [5] the necessity to deter future violations; [6] whether Congress has already acted in that arena, suggesting it does not "want the Judiciary to interfere;" [7] whether a claim addresses individual conduct or a broader policy question; [8] whether litigation would intrude on the function of other branches of government; and [9] whether national security is at stake.

Id. (quoting Abbasi, 137 S. Ct. at 1856-63).  These factors should not cause us to hesitate

to permit a conditions of confinement claim against individual federal officials to

proceed.

Starting with the first "particularly weighty" factor—the existence of an

alternative remedial structure—"[t]he Supreme Court has noted that 'when alternative

methods of relief are available, a Bivens remedy usually is not.'"  Mack v. Yost, 968 F.3d

311, 320 (3d Cir. 2020) (quoting Abbasi, 137 S. Ct. at 1863).  The District Court

correctly recognized that Mammana lacks an alternative remedy.  Because he is no longer

incarcerated at Allenwood, he cannot seek relief through the prison grievance system or

obtain equitable relief.  Mammana v. Barben, No. 4:17-CV-00645, 2020 WL 3469074, at

*3 (M.D. Pa. June 25, 2020).  Moreover, the type of harm he allegedly suffered is the

kind typically addressed via damages.  See Bistrian, 912 F.3d at 92.  Neither the prison

grievance system nor habeas corpus, even if available, could provide such relief.  Id. Furthermore, although the Federal Tort Claims Act does not foreclose a Bivens claim, it only permits claims against the United States and does not permit recovery from an individual defendant, which can be important for deterrence.  Id.  Thus, the absence of an alternate remedy favors recognizing a conditions of confinement claim here.

The second "particularly weighty" factor—separation of powers concerns—also does not counsel hesitation.  As our Court has noted, "there are certain areas within the executive's domain which are particularly sensitive to judicial intrusion.  These include matters related to national security and the military."  Mack, 968 F.3d at 321; see also Abbasi, 137 S. Ct. at 1861 (noting that judicial intrusion into national security policy counsels hesitation against allowing the Bivens claim to proceed); Hernandez v. Mesa, 140 S. Ct. 735, 744 (2020) (same, with foreign relations); United States v. Stanley, 483 U.S. 669, 683-84 (1987) (same, with military affairs).  Here, Mammana's claim does not implicate national security, foreign relations, or military affairs and therefore does not implicate executive power concerns.

Permitting such a claim to proceed also does not infringe upon Congress's interests.  Although Congress has not created a standalone cause of action for constitutional claims against federal officers, the Prison Litigation Reform Act ("PLRA") reflects Congress's goal to reduce the volume of prisoner suits but not a desire "to eliminate whole categories of [Bivens] claims through silence and implication."  Bistrian, 912 F.3d at 93 n.22.  Indeed, the PLRA "govern[s] the process by which federal prisoners bring Bivens claims [and] . . . [t]he very statute that regulates how Bivens actions are

brought cannot rightly be seen as dictating that a <u>Bivens</u> cause of action should not exist at all." <u>Id.</u> at 93; <u>see also</u> <u>Mack</u>, 968 F.3d at 324 ("[T]he argument that Congressional silence within the PLRA suggests that Congress did not want a damages remedy against prison officials for constitutional violations . . . . is untenable, as it would arguably foreclose all <u>Bivens</u> claims brought in the prison context . . . .").[4]  Thus, Congress's enactment of the PLRA after <u>Bivens</u>, <u>Carlson</u>, and <u>Farmer</u> shows that it contemplated damages suits against federal prison officials who violate the Constitution where such a violation results in physical harm.  <u>See</u> 28 U.S.C. § 1915A; <u>Midlantic Nat. Bank v. N.J. Dep't of Env't Prot.</u>, 474 U.S. 494, 501 (1986) ("The normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific.").

Relatedly, permitting such a claim would not result in an intrusion into prison operations any more than in medical treatment cases, failure to protect cases, or § 1983 cases that courts hear every day.  Moreover, the claim here does not challenge a policy. Rather, it arises from a specific incident involving one prisoner who challenges the actions of low-level officials, and thus adjudication of the claim would not impact prison policy.[5]  <u>See</u> <u>Bistrian</u>, 912 F.3d at 94 (distinguishing a claim relating to "a specific isolated event" from one that "more fully calls in question broad policies pertaining to the

---

[4] Contrary to the Majority's view, our binding precedent in <u>Mack</u> and <u>Bistrian</u> squarely rejected the notion that the passing of the PLRA is a special factor counseling hesitation against extending <u>Bivens</u> in the prison context.

[5] In fact, we previously characterized Mammana's claim as "straightforward." <u>Mammana</u>, 934 F.3d at 370.

reasoning, manner, and extent of prison discipline"). Furthermore, conditions of

confinement claims are subject to numerous requirements that weed out frivolous claims,

including screening under 28 U.S.C. § 1915A, exhaustion requirements under the PLRA,

42 U.S.C. § 1997e(a), pleading requirements, Ashcroft v. Iqbal, 556 U.S. 662, 678

(2009), and qualified immunity.[6]

In addition, the need for deterrence does not counsel against recognizing the claim,

but in fact supports it. Permitting a claim against an individual provides a mechanism to

impose individual liability, which in turn serves to deter him or her from repeating

unconstitutional conduct and sends a message to others not to engage in similar acts. To

preclude a cause of action based upon the conditions in which an officer confined an

inmate would allow that officer to escape liability and would run counter to Bivens'

purpose to "deter individual federal officers from committing constitutional violations."

Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 70 (2001). Moreover, if there are

widespread conditions that violate the Eighth Amendment, there would be a "dire need

for deterrence," and allowing such claims to proceed would "validat[e] Bivens['s]

purpose." Lanuza v. Love, 899 F.3d 1019, 1033 (9th Cir. 2018).

Neither the potential cost to the Government of recognizing a conditions of

confinement claim nor the judiciary's ability to weigh those costs counsel in favor of

hesitation. Although every Bivens claim entails some costs, "there are circumstances

where the benefits of Bivens expansion will outweigh these burdens." Mack, 968 F.3d at

---

[6] Moreover, 42 U.S.C. § 1997e(e) further limits the damages recoverable by a prisoner.

324.  Over 150 years ago, Fyodor Dostoevsky wrote that "the degree of civilization in a society is revealed by entering its prisons."  Fyodor Dostoevsky, The House of the Dead 76 (Constance Garnett trans., 1957).  The Framers understood this sentiment and enshrined it in our Constitution by protecting a prisoner from cruel and unusual punishment.  U.S. Const. amend. VIII.  Thus, our Constitution requires that our prisoners be housed with the "minimal civilized measure of life's necessities."  Farmer, 511 U.S. at 834.  "Although the Eighth Amendment does not mandate comfortable prisons, prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care."  Mammana, 934 F.3d at 373 (quotation marks and citations omitted).  The cost of ensuring that this obligation is fulfilled is outweighed by the need to prohibit conditions that are imposed without penological purpose and which pose a substantial risk of serious harm.  Moreover, to conclude otherwise and preclude a federal prisoner from bringing such a claim would mean that a state inmate subjected to inhumane conditions of confinement would be able to sue individual officers for violating his federal Eighth Amendment rights, but a federal inmate subjected to identical conditions could not.  Bivens, as expanded upon in Carlson and Farmer, ensures that such unequal treatment does not occur and that each inmate receives the same constitutional protections.

In sum, because Mammana has no alternative remedy, the PLRA does not preclude a damages claim against federal officers, various tools exist to weed out frivolous claims thus ensuring that condition of confinement claims would not overwhelm prison officials, and because such a claim does not challenge a prison policy or implicate national security, foreign relations, or military matters, and allowing the

claim will deter individual federal officers from violating the constitution, there should be no hesitation in allowing such a claim to proceed.[7]

Because I disagree with my colleagues and conclude that the District Court erred in barring Mammana from proceeding against Lieutenant Barben on his conditions of confinement claim, I respectfully dissent.

---

[7] Although no circuit court has recognized a <u>Bivens</u> claim premised on unconstitutional conditions of confinement in a precedential opinion, the Court of Appeals for the Ninth Circuit recently did so in a nonprecedential opinion. <u>See</u> <u>Reid v. United States</u>, 825 F. App'x 442, 444-45 (9th Cir. 2020) (holding that the plaintiff's Eighth Amendment "conditions of confinement" claim did not present a new <u>Bivens</u> context and, even if it did, there were no special factors counseling hesitation); <u>but see</u> <u>Schwarz v. Meinberg</u>, 761 F. App'x 732, 733-34 (9th Cir. 2019) (holding that the plaintiff's Eighth Amendment claim regarding "unsanitary cell conditions" presented a new <u>Bivens</u> context). Moreover, the Court of Appeals for the Second Circuit is considering this very same issue. <u>See</u> <u>Walker v. Schult</u>, 463 F. Supp. 3d 323, 329 (N.D.N.Y. 2020) (holding that the plaintiff's Eighth Amendment "prison condition case" did not present a new <u>Bivens</u> context), <u>appeal docketed</u>, No. 20-2145 (2d Cir. July 30, 2020)).